CITY OF NEW YORK v. NEW YORK & E. R. FERRY CO.

(District Court, S. D. New York. May 11, 1904.)

1. COLLISION—STEAMBOAT AND FERRYBOAT—STEAMBOAT TOO CLOSE INSHORE.
   A steamboat proceeding through Hell Gate from Hart's Island to New York *held* in fault for a collision with a ferryboat which had just left her slip at Astoria on her trip to Ninety-Second street, New York, on the ground that she was proceeding too close to the shore, and for want of a lookout; also for not keeping her course as required under the starboard-hand rule.

2. SAME—RIGHT OF FERRYBOAT TO SPACE FOR MANEUVER IN LEAVING SLIP.
   A ferryboat is entitled to the space requisite for her proper maneuver in leaving as well as entering her slip.

In Admiralty. Suit for collision.

John J. Delany and E. Crosby Kindleberger, for libellant.
James J. Macklin, for respondent.

ADAMS, District Judge. This action was brought by the City of New York to recover damages caused to its steamboat Fidelity, by collision in Hell Gate, with the ferryboat Steinway, owned by the respondent, on the 22nd day of October, 1903, about 12:30 P. M. The Fidelity was proceeding through the Gate from Harts Island to New York, intending to go through the channel on the west side of Blackwells Island. The Steinway was making a trip from her slip on the Astoria shore to the foot of 92d Street, New York. The collision occurred about 400 feet above the ferryboat's slip and from 100 to 200 feet off the Astoria shore, the port bow of the Steinway coming in contact with the port bow of the Fidelity. The day was clear. The tide, at the time of collision, had been running ebb a little over an hour.

The Fidelity was pursuing a course close to the Astoria shore intending to stop at Blackwells Island on the west side. She was seen by the Steinway, as the latter moved out of her slip, under a hard-a-port wheel, fastened in a becket. The Steinway blew a signal of one blast to the Fidelity, indicating an intention to pass under the latter's stern. This signal, however, was supposed by the Fidelity to be intended for another tug in the vicinity, the Stone, which was towing two scows on a hawser through the Gate to the westward. She was about 500 feet outside of the Fidelity and as much further down the river. The Stone also supposed the signal was for her and replied. The Steinway then slowed down and blew another signal of one blast to the Fidelity, which the latter recognized as being intended for her. She did not reply but shortly afterwards blew alarm signals and stopped and reversed. The Steinway also stopped and reversed but the collision ensued, doing the damage to the Fidelity which is complained of. The Steinway was practically stopped at the time of the collision, but the Fidelity had not overcome her headway entirely.

The trouble arose through the Fidelity's too close navigation to the Astoria shore and through her failure to have a lookout properly stationed and attending to his duties. For the latter reason, the Steinway was not seen by the Fidelity until too late and then instead of keeping her course, which would probably have avoided the collision, the latter

starboarded her wheel, intending to pass under the Steinway's stern. Then seeing the latter's intention to pass inside, the Fidelity ported, which, with the reversing, presented her port side slightly to the Steinway. The Fidelity was in fault in the respects indicated.

It is contended by the Fidelity that the Steinway, after leaving her slip, went outside of the Fidelity and then got nearer the Astoria shore again by making a half circle. The preponderance of the testimony shows that the Steinway did not get outside of the Fidelity's course, but even if she did, it was obvious that she was swinging up the river all the time and intending that the Fidelity should pursue her course and that she, the Steinway, in fulfilling her duty, under the starboard hand rule, should pass inside. Such theory of the case instead of convicting the Steinway of a fault, places another one upon the Fidelity for her failure to keep her course. Moreover, apart from the starboard hand rule, the Steinway was entitled, as a ferryboat, to the space requisite for her proper manœuvre in leaving, as well as entering, her slip. The John S. Darcy (D. C.) 29 Fed. 644, 647; The Breakwater, 155 U. S. 252, 262, 15 Sup. Ct. 99, 39 L. Ed. 139. The Fidelity's change to port deprived the Steinway of the space required for her usual and necessary swing. The Fidelity's manifest fault sufficiently account for the collision.

Libel dismissed.